**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY HAWKINS | : | |
| | : | Case No.: 2:18-CV-00344 |
| Plaintiff, | : | |
| | : | Judge Algenon L. Marbley |
| -vs.- | : | |
| | : | Magistrate Elizabeth P. Deavers |
| EXTENDED LIFE HOMECARE, LTD, *et. al* | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

Now come Defendants Extended Life Home Care, LTD. ("ELHC"), Kenneth Lampley, and Jannon Lampley (hereinafter referred to as "***Defendants***"), by and through the undersigned counsel, and hereby submit their Memorandum in Opposition to Plaintiff's Motion for Conditional Certification. As set forth in the attached Memorandum in Support, Plaintiff only sets forth mere allegations in support of his Motion. He provides no evidence that could support an inference of actual knowledge of a company-wide employment practice in violation of FLSA.

Respectfully submitted,

/s/ Andrew D. Randol
Andrew D. Randol (0095263) Trial Attorney
Vincent P. Zuccaro (0085484)
**ANTHONY LAW, LLC**
383 North Front Street, LL
Columbus, Ohio 43215
(614) 340-0011 PHONE
(614) 340-0012 FAX
adr@anthonylawllc.com
vpz@anthonylawllc.com
*Attorneys for Defendants Extended Life Home Care, Ltd., Kenneth Lampley, and Jannon Lampley*

**MEMORANDUM IN SUPPORT**

## I. INTRODUCTION

Plaintiff moves this court for conditional certification as a collective action under 29 U.S.C. §216(b) based upon nothing but a blanket and conclusory allegation that Defendants maintained a "common company-wide policy of not paying named Plaintiff and those similarly situated overtime compensation" pursuant to the requirements of FLSA. *Plaintiff's Motion for Conditional Certification* at 5. Plaintiff does not state that he has any personal knowledge that such a companywide policy exists or that other similarly situated individuals were affected.

Plaintiff does not allege that he witnessed other individuals work more than forty hours per week, that he spoke to other individuals about their work hours or compensation, does not provide the names of any co-workers who worked overtime hours for which they were not properly paid, or that he was witness to any discussion from management, or has seen any written documents indicating that Defendants maintain a companywide policy of not paying overtime compensation to other home health aides in accordance with FLSA.

Plaintiff does not make these assertions, most likely because, he cannot. As a home health aide ("HHA"), Plaintiff, as well as the other HHAs, were responsible for providing in home care services to patients. *See Declaration of Kenneth Lampley* ("Lampley Decl.") at ¶7, 8, attached hereto as **Exhibit 1**. Hence, Plaintiff and other HHAs were rarely required to enter the offices of ELHC. *Id.* at ¶8. The vast majority of Plaintiff's work was performed in the homes of ELHC's patients (the same patients Plaintiff solicited and absconded with upon leaving the employ of ELHC). *Defendant's Counterclaim* at ¶16-18. Typically, Plaintiff and other HHAs only came to ELHC's office in order to submit their weekly timesheets. *Lampley Decl.* at ¶10.

However, all HHAs, including Plaintiff, were permitted to submit timesheets via facsimile, which many of them chose to do, including the Plaintiff at various times. *Id.* at ¶11. Throughout the twelve months that Plaintiff was employed by ELHC, Plaintiff only entered the office of ELHC approximately one time per month. *Id.* at ¶12. In addition, Plaintiff did not perform work alongside other HHAs. Plaintiff was the sole HHA responsible for caring for his designated patients. *Id.* at ¶13. Therefore, Plaintiff had minimal interaction with other HHAs and other ELHC employees. *Id.* at ¶14.

Apart from not making any allegations as to his personal knowledge of a companywide policy in violation of FLSA, Plaintiff fails to explain the agreement he signed which states the "aide will be paid time and a half for approved overtime." *See* Exhibit 1 of Lampley Decl.; Lampley Decl. at ¶4. While the agreement may not be definitive evidence that Plaintiff did not suffer any FLSA violations, it does run contrary to his contention that Defendants maintain a companywide policy of not paying all other HHAs proper overtime compensation.

As a result, Plaintiff fails to present even a minimal amount of evidence that Defendants maintain a companywide practice in violation of FLSA or that other similarly situated individuals suffered from the same FLSA violations allegedly incurred by Plaintiff. Thus, Plaintiff's request for conditional certification under §216(b) of the FLSA should be denied.

## II. LAW AND ARGUMENT

The FLSA provides that a court may certify a collective action brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" 29 U.S.C. § 216(b). "The lead plaintiffs bear the burden to show that the proposed class members are similarly situated to the lead plaintiff." *Myers v. Marietta Mem. Hosp*., 201 F. Supp. 3d 884, 890, 2016 U.S. Dist. LEXIS 109153, at 9 (S.D. Ohio 2016).

The Sixth Circuit has upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action. *Smith v. Generations Healthcare Servs. LLC*, 2017 U.S. Dist. LEXIS 106583, at 5-6 (S.D. Ohio 2017). "In the first phase, the conditional-certification phase, conducted at the beginning of the discovery process, named plaintiffs need only make a modest factual showing that they are similarly situated to proposed class members." *Myers*, 201 F. Supp. 3d 884, at 890. "Plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 890.

Although a plaintiff need only a "modest factual showing that they are similarly situated to the other potential plaintiffs whom they seek to notify of the collective action," this does not mean the court will "rubber-stamp a proposed class." *Lutz v. Huntington Bancshares, Inc*., 2013 U.S. Dist. LEXIS 56477, *5, 2013 WL 1703361 (S.D. Ohio 2013). Contrary to Plaintiff's claim that mere allegations will suffice, this Court has held that some evidence must be presented to support allegations that others are similarly situated. *Id.* at 6.

Furthermore, this Court has also held that caution should be exercised in granting conditional certification because the Sixth Circuit Appellate Court has held "that a conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable." *O'Neal v. Emery Fed. Credit Union*, 2013 U.S. Dist. LEXIS 110383, *15, 2013 WL 4013167 (S.D. Ohio 2013).

In support of the notion that allegations in the complaint alone are sufficient to conditionally certify a class, Plaintiff relies on *Pritchard v. Dent Wizard Int'l Corp*., 210 F.R.D. 591, 592, 2002 U.S. Dist. LEXIS 21411, *1, 149 Lab. Cas. (CCH) P34,758 (S.D. Ohio 2002) and *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996). However, *Pritchard* was a

decision on the defendant's Civ.R. 12(B)(6) motion to dismiss for failure to state a claim with respect to plaintiff's claim for a collective action under §216(b). *Pritchard*, 210 F.R.D. 591 at 594-96. The *Pritchard* court denied defendant's motion to dismiss plaintiff's claim for a collective action under §216(b) based solely upon the allegations in the complaint. *Pritchard* did not grant conditional certification based solely upon the allegations in the complaint as Plaintiff claims. *Id.*

Plaintiff's assertion that *Belcher* also stands for the proposition that a collective action class can be certified based solely upon the allegations in the complaint is also a stretch. In *Belcher*, the plaintiffs submitted **24 affidavits** indicating that hourly employees were worked "off the clock" and **over 400** individuals already filed consents prior to the court certifying the collective action. *Belcher v. Shoney's, Inc*., 927 F. Supp. 249, 252, 1996 U.S. Dist. LEXIS 7659, *5, 132 Lab. Cas. (CCH) P33,425 (M.D. Tenn. 1996). This is a far cry from merely relying on the allegations contained in the complaint.

Rather than simply rely on allegations in the complaint, this Court has noted that a plaintiff "must demonstrate a factual nexus—that is, something more than 'bare allegations'—to warrant conditional certification" *Smith*, 2017 U.S. Dist. LEXIS 106583 at 12. In the majority of cases, "this Court has required more than allegations in the complaint and a single plaintiff's affidavit to conditionally certify an FLSA class." *Id*. at 12, 13.

In terms of evidence, "allegations in declarations need not be highly specific," however, "to warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has *actual knowledge* about other employees job duties, pay structures, hours worked, and whether they were paid for overtime hours." *O'Neal*, 2013 U.S. Dist. LEXIS 110383, at 25. In other words, "Plaintiffs whose

declarations contain facts that support an inference that they have actual knowledge of company-wide employment practices typically succeed in obtaining conditional certification." *Id*.

For example, in *Searson v. Concord Mortgage Corp*., "mortgage loan officers adequately supported their claim that they were subject to a uniform, company-wide policy that failed to provide them minimum wage and overtime compensation in violation of the FLSA when they submitted affidavits of seven loan officers containing information based on their observations of other employees, and when their employment contracts expressly limited compensation to commissions." *Id.* at 25-26; citing *Searson v. Concorn Mortgage Corp.*, No. 07-cv-3909, 2009 U.S. Dist. LEXIS 87968, 2009 WL 3063316, at *5 (E.D.N.Y. Sept. 24, 2009). The seven affidavits submitted by plaintiffs in that case included claims that plaintiffs observed other loan officers in their respective branches working 55-70 hours per week and that the plaintiffs became familiar with the uniform duties, policies, training, and directives that the defendant applied to all of its loan officers. *Searson* 2009 U.S. Dist. LEXIS 88926 at 12-14. The plaintiffs' affidavits were further buttressed by the defendant's form employment contract which expressly limited compensation to commissions. *Id.*

"Another example of sufficient evidence to constitute a factually sufficient basis to support conditional certification is found in *Carter v. Jackson-Madison County Hospital District*." *O'Neal*, 2013 U.S. Dist. LEXIS 110383, at 27; citing Carter v. Jackson-Madison County Hospital District. No. 1:10-cv-1155, 2011 U.S. Dist. LEXIS 35163, 2011 WL 1256625 (W.D. Tenn. March 31, 2011). In *Carter*, "the plaintiff hospital employee supported her certification motion with her affidavit in which she explained that the hospital had a computerized time and attendance system that automatically deducted a thirty-minute meal period per work shift but that she and other hourly employees performed compensable work

during those uncompensated meal breaks." *O'Neal*, 2013 U.S. Dist. LEXIS 110383 at 27. In her affidavit, the plaintiff specifically testified to the computerized time system that automatically deducted 30-minute meal periods per work shift and that plaintiff and other employees were required to do work during meal periods. *Carter*, 2011 U.S. Dist. LEXIS 35163 at 41-44. In other words, the plaintiffs in both *Carter* and *Searson* had actual knowledge of companywide employment practices in violation of FLSA and that other employees were affected by such practices.

In the case at bar, Plaintiff simply makes a blanket allegation that Defendants have a companywide practice of not paying HHAs proper overtime wages without demonstrating any personal knowledge that such a policy or practice exists as applied to other HHAs. Unlike *Searson*, in which the plaintiffs submitted affidavits stating they personally observed other employees working between 55-70 hours per week and that they were familiar with the commission-based compensation model in place that did not pay overtime, the Plaintiff in this case does not make any claims that demonstrate his own personal knowledge to such a practice and that it affected other HHAs. Nor can the Plaintiff in this case point to the existence of anything else that would indicate his personal knowledge of a companywide practice in violation of FLSA, such as the plaintiff in *Carter* could do by testifying that the company made automatic 30-minute deductions for lunch breaks that were never taken. Rather than being able to buttress his argument with documentary evidence like the plaintiffs did in *Searson*, Plaintiff's claim in this case is directly contradicted by the written agreement between he and ELHC which states that he will be paid "time and a half for approved overtime." *See Exhibit 1 attached to Lampley Decl.* at ¶3.

Given the nature of Plaintiff's job as an HHA, it is not surprising that Plaintiff does not appear to be aware of the experiences of other HHAs. Unlike the plaintiffs in *Searson*, the Plaintiff in this case did not actually work in one location with the other employees. *Lampley Decl.* at ¶13. The nature of the job as an HHA required the Plaintiff to perform his work in the homes of ELHC's patients. *Id.* at ¶7-9. The Plaintiff in this case hardly ever saw the inside of ELHC's offices and therefore cannot state that he observed other HHAs working more than forty hours a week. *Id.* at ¶8-12. Furthermore, apart from producing any documentation of a companywide policy as the plaintiffs did in *Searson*, the exact opposite exists in the case at bar. Defendants produced a document, signed by the Plaintiff, stating that Plaintiff will be paid "time and a half for approved overtime." *Exhibit 1 attached to Lampley Decl.* at ¶3. This document was also attached to Defendants' Answer and Counterclaim as Exhibit 1.

The case at bar is more similar to the facts in *O'Neal v. Emery Fed. Credit Union*. In that case, the three plaintiffs all performed their work from their home, with only one plaintiff performing some work at home and some work in the defendant's Seattle office. *O'Neal*, 2013 U.S. Dist. LEXIS 110383 at 3. Because of this, none of the plaintiffs:

> attested to personally observing any other loan officer work more than his or her contracted number of hours or more than forty hours per week. None of the Plaintiffs averred that they spoke to any other Emery loan officer about hours worked or compensation, nor do they claim to have discussed these matters in any way with any other Emery loan officer. None of the Plaintiffs provide the names of any co-workers who worked hours for which they were not paid. O'Neal worked from home: there is nothing in her statement to indicate that she spoke to any other loan officers to determine whether her work experience was similar to theirs. The same is true of Dan Mulvehill. Tim Mulvehill worked out of an office location and his home office; nonetheless, he does not state that he spoke to any other loan officer about hours worked or compensation or specifically witnessed any loan officers performing work in excess of the hours they contracted to work.

*Id.* at 30-31.

Thus, the statement's provided by the three plaintiffs in support of their motion for conditional certification did not "include facts from which the Court could draw an inference that other Emery loan officers worked more than their contracted hours or worked more than forty hours a week without being paid overtime compensation." *Id.* at 31.

Like the plaintiffs in *O'Neal*, the Plaintiff in this case worked at a separate location than the other HHAs and therefore he has no actual knowledge as to their particular circumstances. Although ELHC's office is in one location, all HHAs spend the vast majority of their time working inside of patients' homes where they can perform their caretaking duties. *Lampley Decl.* at ¶7, 8. In fact, the Plaintiff, as well as other HHAs, typically only went into to the office to drop off their timesheets. *Id.* at ¶10. However, many of them simply faxed in their time sheets rather than dropping them off in person. *Id.* at ¶11. Defendants estimate the Plaintiff was in ELHC's office on average of once per month. *Id.* at ¶12. Therefore, the Plaintiff here is similar to the plaintiffs in *O'Neal*. He did not go to work daily in ELHC's office. His work days typically consisted of going straight to the patient's home in order to provide the HHA services. Nor did Plaintiff work with other HHAs in the course of his duties. *Id.* at ¶13, 14. Therefore, it is unlikely that Plaintiff was able to obtain actual knowledge of Defendants' alleged companywide practices or how they may have effective other HHAs – nor does he claim to have such first-hand knowledge in his declaration.

Rather, the Plaintiff's allegation that ELHC has a uniform policy against paying HHAs proper overtime wages is simply a conclusory allegation not based upon any actual knowledge of such a policy or the experiences of other HHAs. While Plaintiff can certainly testify as to his own experience in terms of hours work and pay received, he does not allege to have actual knowledge that others are similarly situated to him via a companywide policy. Plaintiff does not

claim to have actual knowledge that other HHAs worked over forty hours in a workweek, no actual knowledge that other HHAs were not paid overtime wages if they did work for over forty hours in a workweek, and no actual knowledge that Defendant has such a companywide policy that is applied to all HHAs.

In sum, Plaintiff's motion is totally devoid of any allegations or facts sufficient to support an inference that he has *actual knowledge* about other employees' job duties, pay structures, hours worked, and whether or not they were paid for overtime. Therefore, Plaintiff fails to demonstrate that other employees are similarly situated to him for the purpose of conditionally certifying such employees as a class in this case.

## III. CONCLUSION

Given the allegations in the complaint and Plaintiff's declaration, this court cannot conclude that Plaintiff has met his burden for conditional certification of a class pursuant to 29 U.S.C. §216(b). Plaintiff claims that Defendants have a companywide policy of not paying overtime to HHAs but fails to state how he is personally aware of such a companywide policy as applied to all HHAs. He further fails to to provide any evidence that other HHAs work over forty hours in a workweek and are not paid overtime.

At best, Plaintiff's argument amounts to an inference on his own part that something happened to him, and therefore, it must have happened to everyone else. This inference does not meet the required "modest factual showing" that Plaintiff is similarly situated to other potential plaintiffs. *See Myers*, 201 F. Supp. 3d 884, at 890. Nor does Plaintiff's declaration allege facts sufficient to support an inference that he has *actual knowledge* about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours. *See O'Neal*, 2013 U.S. Dist. LEXIS 110383, at 25.

Therefore, the Court should deny Plaintiff's motion for conditional certification pursuant to 29 U.S.C. §216(b).

Respectfully submitted,

/s/ Andrew D. Randol
Andrew D. Randol (0095263) Trial Attorney
Vincent P. Zuccaro (0085484)
ANTHONY LAW, LLC
383 N. Front Street, LL
Columbus, Ohio 43215
(614) 340-0011
(614) 340-0012 FAX
adr@anthonylawllc.com
vpz@anthonylawllc.com
*Attorneys for Defendants Extended Life Home Care Ltd., Kenneth Lampley, and Jannon Lampley*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's Electronic Filing System:

Matthew J.P. Coffman (0085586)
Coffman Legal, LLC
1457 S. High St.
Columbus, OH 43207
Phone: (614) 949-1181
Fax: (614) 386-9964
mcoffman@mcoffmanlegal.com

Peter A. Contreras
Contreras Law, LLC (0087530)
PO Box 215
Amlin, OH 43002
Phone: 614-787-4878
Fax: 614-923-7369
Peter.contreras@contrerasfirm.com

/s/ Andrew D. Randol
Andrew D. Randol (0095263)

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY HAWKINS<br><br>Plaintiff,<br><br>-vs.-<br><br>EXTENDED LIFE HOMECARE, LTD, *et. al*<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No.: 2:18-CV-00344<br><br>Judge Algenon L. Marbley<br><br>Magistrate Elizabeth P. Deavers |

**DECLARATION OF KENNETH LAMPLEY**

I, Kenneth Lampley, declare, upon personal knowledge and under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. Plaintiff Anthony Hawkins ("Plaintiff") was employed by Extended Life Home Care, LTD. ("ELHC") from approximately December 2016 until December 2017 as a home health aide ("HHA").

2. On December 6, 2016, Plaintiff signed a Contractor Agreement (the "Agreement") in which Plaintiff was to provide home health aide services to ELHC's patients.

3. A true and accurate copy of the Agreement is attached hereto as **Exhibit 1**.

4. Although the Agreement refers to Plaintiff as a "contractor," the Agreement explicitly states the "aide will be paid time and a half for approved overtime." *Exhibit 1* at p.1.

5. In addition, the Agreement restricts Plaintiff from "directly or indirectly attempt[ing] to induce any actual or prospective consumers or employees of E.L.H.C. to terminate, alter or change its relationship with E.L.H.C." during the term of the Agreement or for a one-year period following the termination of the Agreement. *Exhibit 1* at p.2.

6. During the time of Plaintiff's employment with ELHC, ELHC did not maintain a company-wide policy of not paying Plaintiff, or other employees of ELHC, overtime compensation of at least one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek.

7. As an HHA, Plaintiff was responsible for providing in home care services to patients.

8. Hence, Plaintiff and other HHAs were rarely required to enter the offices of ELHC. This includes all members of the purported collective who provided any companionship services, rehabilitation services, domestic services, home care, and/or other in-home services.

9. When reporting to work, Plaintiff would go straight to the patient's home and not to the offices of ELHC.

10. Typically, Plaintiff and other HHAs only came to ELHC's office in order to submit their weekly timesheets.

11. However, all HHAs, including Plaintiff, were permitted to submit timesheets via facsimile, which many of them chose to do, including Plaintiff at various times.

12. Throughout the twelve months that Plaintiff was employed by ELHC, Plaintiff only entered the office of ELHC approximately one time per month.

13. In addition, Plaintiff did not perform work alongside other HHAs. Plaintiff was the sole HHA responsible for caring for his designated patients.

14. Therefore, Plaintiff's interaction with all other ELHC employees was very minimal.

15. Upon information and belief, when Plaintiff terminated his employment with ELHC, Plaintiff solicited the ELHC patients that Plaintiff cared for which resulted in those

patients terminating home health services with ELHC and procuring home health services with a competing entity that Plaintiff is currently employed with.

Dated: July 27, 2018

I, Kenneth Lampley, declare under penalty of perjury that the foregoing is true and correct.

Kenneth Lampley
Signature

Kenneth Lampley
Printed Name




# EXHIBIT 1 to Declaration of Kenneth Lampley

## CONTRACTOR AGREEMENT

Agreement by and between, Anthony Hawkins (hereinafter the "CONTRACTOR") and Extended Life Home Care Ltd. (hereinafter "Extended Life Home Care" or "E.L.H.C.") with offices located at *1350 W 5th Avenue Ste. 16, Columbus, OH, 43212*, made this 6th day of December, 16.

WHEREAS, the CONTRACTOR is an AIDE who wishes to be contracted by Extended Life Home Care, to provide home health aide services to its consumers, and WHEREAS, the CONTRACTOR declares that he/she has complied with all federal, state and local laws regarding necessary certifications and licenses that are required for the CONTRACTOR to perform his/her duties under this agreement.

NOW, THEREFORE, IN CONSIDERATION OF THE FOREGOING REPRESENTATIONS AND THE FOLLOWING TERMS AND CONDITIONS, THE PARTIES AGREE:

**Term**

The term of this agreement shall continue and be binding upon both parties unless terminated as herein provided for one (1) year, at which time it will be reviewed. The State of Ohio is an at-will state; therefore, the contractor agreement may be terminated at any time, for any reasons, by either party.

**Relationship Between the Parties**

The status of the AIDE during his/her association with Extended Life Home Care is that of an independent contractor. It is highly recommended that the CONTRACTOR maintains a policy of Liability Insurance to cover any claim arising out of the performance of his/her services under this Agreement. The CONTRACTOR shall indemnify, save harmless and defend E.L.H.C. for any such claims arising from an act or omission of the CONTRACTOR or his agents. The CONTRACTOR assumes the liability in the event of a Worker's Compensation or malpractice liability claim.

**Taxes**

The CONTRACTOR understands and agrees that Extended Life Home Care will not withhold on behalf of the CONTRACTOR any sums for income tax, social security, or any other withholding pursuant to any law or requirement of any governmental body relating to the CONTRACTOR.

**Payment Agreement** - ELHC and the contractor agrees to a pay rate listed below:

Aide Shifts: State minimum wage per hour

Overtime clause: The aide will be paid time and a half for approved overtime

**Pre-Existing Non-Compete Clause & Non–Solicitation Agreement** - Extended Life Home Care requires the CONTRACTOR to indicate if he/she has a pre-existing non-compete and/or non-solicitation agreement with a previous agency. The CONTRACTOR assumes full financial responsibility for attorney retainer fees, court fees, expenses, and damages resulting from the agreement in place.

**Power of Attorney clause** – Extended Life Home Care requires the CONTRACTOR to indicate if he/she is the POA, acting POA, or medical decision-maker of a client. The agency prohibits the CONTRACTOR from servicing and receiving reimbursement if this relationship exists.

**Recording Keeping** - It is the responsibility of the contractor to update such records of evaluation/ screening and aide forms as are required by law or are prescribed by generally accepted standards of care.

**Professional Responsibility** - Nothing in this agreement shall be construed to interfere with or otherwise affect the rendering of services by the CONTRACTOR in accordance with generally accepted teaching practices. This agreement shall be subject to the laws and regulations of the State of Ohio concerning the practice of homecare. Subject to the foregoing, the CONTRACTOR retains the right to ensure that all services provided pursuant to the requirements of law. Rendered services shall comply with local, state, federal, and agency regulations.

**Severance Agreement** – Either party can opt to sever the contractor agreement. In the event the CONTRACTOR attempts to defame the character of E.L.H.C., or its workers, in anyway, litigation may occur. The CONTRACTOR is prohibited from contacting Extended Life Home Care consumers for any reason, after date of separation.

**Non- Compete Clause, Non – Solicitation & Non-Rendering of Services** - The contractor warrants to Extended Life Home Care that he/she will not attempt to compete with Extended Life Home Care to obtain any consumer cases as an individual provider or through another agency, for the duration that a patient is a consumer of Extended Life Home Care. The CONTRACTOR also agrees that during his/her contractor agreement and throughout a one-year period commencing on the date of his/her contractor agreement ceases, he/she shall not render any services, without the prior written consent of E.L.H.C., or directly or indirectly attempt to induce any actual or prospective consumers or employees of E.L.H.C. to terminate, alter or change its relationship with E.LH.C.. If the agreement is violated litigation will occur to pursue damages resulting from breach of agreement in the amount of not less than $3,000.00 (US Dollars) in addition to court cost and attorney fees. The CONTRACTOR represents that he/she has read and understands the forgoing.

**HIPAA and PHI Obligation** - All information related to or obtained from the consumer by the CONTRACTOR shall be viewed as private and confidential. CONTRACTORs shall be familiar and comply with local, state, and federal mandates governing privacy and confidentiality, such as the federal Health Insurance Portability and Accountability Act (HIPAA) requirements and state medical records laws. Information obtained by the CONTRACTOR from or about the consumer shall be viewed as private and confidential, unless the consumer gives informed consent for the CONTRACTOR to release or discuss the information with another party. There may be other exceptions to confidentiality as required by law or professional ethics. The CONTRACTOR should be familiar with national, state, and local exceptions to confidentiality, such as mandates to report when the consumer is a danger to self or others and for reporting child or elder abuse and neglect. The CONTRACTOR shall advise the consumer of confidentiality limitations and requirements at the beginning of treatment. Professional judgment in the use of confidential information shall be based on best practice, as well as legal, and ethical considerations. Furthermore, the CONTRACTOR attests and understands that the CONTRACTOR agreement is coexisting and in combination with the State of Ohio standards for nursing, and policies and procedures set forth.

[signature]
Contractor

[signature]
Administrator/GM

12-6-16
Date